UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
GUADALUPE ARCOS,                                               :
                                                               :    97 CV 3739 (ARR)
                    Plaintiff.                                 :
                                                               :    <u>NOT FOR</u>
        -against-                                              :    <u>PUBLICATION</u>
                                                               :
COMMISSIONER OF SOCIAL SECURITY,                               :    <u>OPINION</u>
                                                               :    <u>AND ORDER</u>
                    Defendant.                                 :
------------------------------------------------------------- X
ROSS, United States District Judge:

Plaintiff, Guadalupe Arcos ("Mrs. Arcos" or "plaintiff"), brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of the Social Security Administration ("SSA" or "Commissioner"), dated August 17, 2004 granting her Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f as of June 10, 1999, but denying disability benefits. Plaintiff initiated this action by complaint filed on June 26, 1997. By order dated February 6, 1998, the court remanded the case to the Commissioner pursuant to the sixth sentence of 42 U.S.C. § 405(g). By order dated January 24, 2005, the court reopened the case at the Commissioner's request. Defendant has moved for judgment on the pleadings pursuant to Rule 12(c). Plaintiff has cross-moved for judgment on the pleadings. For the reasons stated below, the court denies defendant's motion for judgment on the pleadings, grants plaintiff's cross-motion for judgment on the pleadings, reverses the Commissioner's decision, and remands solely for calculation of benefits.

1

## BACKGROUND

A. <u>Procedural History</u>

Plaintiff, who is represented by counsel, applied for DI and SSI benefits on December 22, 1994, alleging that she had been disabled since July 30, 1991. R. 60-63.[1] Plaintiff claimed that she was unable to work due to a lumbosacral sprain and chronic impingement of the right shoulder. R. 17. These claims were denied, R. 76, 81, and plaintiff requested and was granted a hearing before an ALJ. The hearing took place before ALJ David Z. Nisnewitz on January 17, 1996. R. 30. By decision dated April 15, 1996, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act and therefore not entitled to DI or SSI benefits. R. 23-24. The Appeals Council denied plaintiff's request for review on April 30, 1997, R. 2, and plaintiff filed the instant action on June 26, 1997. However, the court remanded the case to the Commissioner pursuant to the sixth sentence of 42 U.S.C. § 405(g) for further administrative proceedings to consider new evidence submitted by plaintiff. On December 23, 1999, a hearing took place before ALJ Sol A. Wieselthier. R. 356. By decision dated June 9, 2000, the ALJ denied plaintiff's application for benefits. R. 397. The Appeals Council, however, remanded the case after plaintiff filed exceptions to the ALJ's decision. ALJ Wieselthier held another hearing on May 16, 2002, R. 183, and subsequently issued a decision denying benefits on November 2, 2002. R. 173. On August 17, 2004, the Appeals Council reviewed the ALJ's decision and partially reversed in plaintiff's favor, finding plaintiff disabled as of June 10, 1999. R. 155-56. Thus, the Appeals Council decision is considered the final decision of the Commissioner. The instant action was timely commenced.

---

[1] "R." refers to the administrative record filed with the court by defendant Commissioner.

B. Testimonial Evidence

On January 17, 1996, plaintiff testified, with the aid of an interpreter, that she was born in Guatemala[2] on June 11, 1954, and has been living in the United States since 1983. R. 33. She also testified that she graduated from high school in Ecuador.[3] R. 34. When questioned about her work experience, plaintiff stated that she worked as a bank teller in Ecuador. R. 36. She also testified that she worked in a factory making pocket book parts from 1983 to 1986, and then worked as an office cleaner until 1991 in the United States. R. 35-36. Plaintiff further testified that she was injured twice while working as an office cleaner. In April of 1990, she injured her spine and did not return to work until June of 1990. R. 37. In February of 1991, she injured her right shoulder while lifting a garbage bag, but she only took a few days off before returning to work. R. 36-38. She testified that she left her job and stopped working entirely in July of 1991 due to the pain in her arm and her right leg. R. 38, 39.

When questioned about her activities at home since her injuries, plaintiff stated that her sister shops and cooks for the household and helps her clean. R. 40. She also mentioned that she gave birth to twins in November of 1991. R. 41. In addition, she noted that she traveled to Ecuador in 1994 for one month to be with her mother after her father's death. R. 40. In response to questioning about the severity of her injuries, plaintiff stated the pain in her right shoulder, back, and right leg is "constant" and severe "only 50 percent of the time." R. 42. She further testified that her leg hurts when she walks a lot and when she stands or sits for long periods of

---

[2] According to the hearing conducted on May 16, 2002, plaintiff was born in Ecuador not Guatemala. R. 191.

[3] In the May 2002 hearing, plaintiff also noted that she completed her third year of college in Ecuador, majoring in business administration. R. 198.

3

time. R. 43. She also stated that she took prescription medicine, including Vicodin, at one point, and regularly takes Motrin to relieve her pain. R. 50. Plaintiff testified that she has difficulty bending due to her back pain and cannot lift with her right arm. R. 52.

At a more recent hearing on May 16, 2002, plaintiff testified, again with the aid of an interpreter, that she continued to experience pain in her spine area, in her lower back, which sometimes radiates upward to the mid-back area. R. 193-94. She also stated that she continued to experience pain in her right shoulder. R. 193. She testified that the pain to her shoulder continued to be "very severe," radiating down from her shoulder to her arm, and the pain in her back radiates from her lower to mid-back region. R. 204-05. She mentioned that she takes Tylenol up to four times a day to relieve the pain and sees a physical therapist once a month for massages. R. 203-04. Plaintiff also noted that she can lift very little with her right hand and that she is right-handed and "cannot write very well" due to loss of strength in her right hand. R. 205-06. Her back pain, according to plaintiff, radiates down to her leg and limits her ability to walk and stand for long periods of time. R. 206-07. She also testified that she cannot sit down for long periods of time—more than twenty minutes—without experiencing pain. R. 208. In order to relieve her pain, she stated that she needs to get up and lie down for forty-five minutes. Id. Indeed, the hearing record reflects the fact that plaintiff had to stand up during the hearing due to pain in her lower back and right leg. R. 209. Plaintiff further testified that her activities are mainly limited to watching television and reading and that her sister and mother help her with the housework and groceries. R. 212-13. She also stated that her right arm has become so weak that, at times, she does not have the strength to hold up a spoon. R. 218.

C. Medical and Related Evidence

On March 23, 1991, Dr. Arturo Pena, an orthopedist, began treating plaintiff for her shoulder injury. He observed tenderness in the subacrimonial region and diagnosed plaintiff with post-traumatic impingement syndrome. R. 139. He injected her shoulder with cortisone and prescribed Vicodin to relieve her pain. Id. On May 11, 1991, Dr. Pena made the same findings about plaintiff's shoulder injury, and also noted that there was "no evidence of pathology" in relation to plaintiff's cervical spine. R. 140. On July 5, 1991, Dr. Pena again noted tenderness in plaintiff's right shoulder and also noted that her range of motion was restricted. Id. On August 7, 1991, Dr. Pena saw plaintiff again and found that she continued to have pain in her shoulder, but that it extended to her forearm. R. 141. He noted that plaintiff had more weakness in her shoulder and concluded that she should continue with physical therapy. Id. On August 10, 1991, Dr. Pena noted that plaintiff was pregnant and found that she has restricted lumbosacral motion with tenderness and spasms. R. 142. He recommended continued bed rest and analgesics. Id. On September 17, 1991, Dr. Pena reported to the Worker's Compensation Board that plaintiff suffered from post-traumatic impingement of her right shoulder. R. 123. On September 18, 1991, Dr. Pena also reported to the Worker's Compensation Board that plaintiff had an acute attack of lumbosacral pain and post-traumatic lumbosacral syndrome. R. 124.

Dr. Pena saw plaintiff again on January 11, 1992, finding that her shoulder and back pain were "significant" and "not improving." R. 141. After examining plaintiff, he concluded that she had a "reduce[d] range of motion of both areas with pain and tenderness." Id. Dr. Pena continued to see plaintiff every six to eight weeks until June of 1994. R. 143-50. At each visit, Dr. Pena found that plaintiff's symptoms were unchanged and recommended that plaintiff continue physical therapy. Id. During this time, plaintiff underwent physical therapy

5

approximately twice a week. R. 139-50. In addition, Dr. Pena ordered an MRI of plaintiff's right shoulder, which was performed on September 18, 1993 by Dr. Eugene Barasch. Dr. Barasch found that plaintiff had a "significant impingement secondary to a[n] angulated low lying acromian process without tear or joint effusion."[4] R. 151. On June 29, 1994, Dr. Pena noted that plaintiff's "symptoms persist" and also concluded that she had lost twenty percent of motion in her right shoulder. Tr. 150. He advised her to return for treatment when necessary. Id.

On February 7, 1996, Dr. Pena conducted a residual functional capacity evaluation of plaintiff. R. 253. He concluded that, in an eight hour workday, plaintiff has the capacity to sit for two hours, stand for two hours, and walk for two hours. Id. He also found that she can only occasionally lift or carry up to ten pounds. Id. He also found that she can bend, squat, crawl, and climb frequently. Id. With regard to repetitive actions with her hands, he concluded that she had limited capacity in her right hand. Id. He noted that she had no ability to grasp or push and pull with her right hand on a repetitive basis, but she could conduct fine manipulations with her right hand. Id.

Dr. Rafael A. Vargas, a chiropractor, treated plaintiff on a symptomatic basis after she injured her back lifting a garbage bag at work in April of 1990. R. 133. Based on x-rays taken of her lumbosacral region on April 3, 1990, Dr. Vargas concluded that she had "increased lumbar lordosis left posterior rotational deviation (subluxation) of L-2-3[] and L-4." R. 134. Dr. Vargas started treating plaintiff again after she injured her shoulder at work in February of 1991. R. 133.

---

[4] In spite of ordering the MRI, Dr. Pena does not appear to have remarked on the results of the MRI in his notes.

6

On March 1, 1991, Dr. Vargas certified that plaintiff was "totally incapacitated" for two to four weeks due to exacerbation of her shoulder injury and recommended "no lifting with [her] right arm." R. 136. In a report dated February 9, 1995, Dr. Vargas noted that plaintiff returned to his office for treatment on March 10, 1994, complaining about lower back symptoms, pain in her right hip and groin, and occasional pain radiating down her left side. R. 133. Plaintiff also complained that she limps due to the pain and her right foot drags. Id. On June 7, 1994, after conducting a physical examination of plaintiff, Dr. Vargas concluded that flexion of her lumbar spine was within normal limits with pain at eighty degrees; extension was at twenty degrees; and rotation was at thirty degrees on the right side. R. 277. In addition, Dr. Vargas noted that plaintiff had severe tenderness in her right gluteal and adductor and moderate to severe tenderness at L3-5. R. 277. Dr. Vargas made similar findings when he saw plaintiff on February 9, 2005. As a result, he diagnosed her with lumbosacral strain/sprain, right lower extremity radicular syndrome with fibromyalgia and articular dysfunction of the right hip. R. 134.

On February 2, 1996, Dr. Vargas conducted a residual functional capacity evaluation of plaintiff. R. 255. He concluded that, in an eight hour workday, she could sit for less than two hours, stand for less than two hours, and walk for less than two hours. Id. He noted that she could occasionally lift or carry ten pounds. In addition, he found that she could occasionally bend or squat and never crawl or climb. He also found limitations in her capacity to use her right hand for pushing or pulling.[5] He also noted some limitation in her ability to push and pull with her left hand.

---

[5] It is unclear whether Dr. Vargas found limitations in plaintiff's capacity to grasp with her right hand because there are marks on both the "yes" and "no" boxes to that question. R. 255.

Dr. Milton M. Smith, a consulting physician, examined plaintiff on February 6, 1995. R. 130. Plaintiff complained of pain in her back and her right shoulder. Id. Dr. Smith observed that plaintiff walked normally on her tiptoes and heels. Id. He found that plaintiff lacked twenty degrees of forward flexion in the lumbosacral region. Id. He also found that she lacked twenty degrees bilaterally in straight leg raising. Id. With regard to plaintiff's right shoulder, Dr. Smith found no redness, swelling, increased warmth or tenderness. Id. He noted, however, that her range of motion was diminished, concluding that she lacked thirty degrees of flexion and abduction in her right shoulder. R. 131. Moreover, he noted a lack of fifteen degrees of external rotation. Id. He also found that her glenohumeral and acromioclavicular joints showed no redness, swelling, increased warmth or tenderness. Id. According to Dr. Smith, an x-ray of plaintiff's lumbosacral spine revealed mild degenerative changes. Id. However, an x-ray of her right shoulder revealed no abnormalities. Dr. Smith diagnosed plaintiff with a lumbosacral sprain and chronic impingement of the right shoulder. Id. He further concluded that "[t]here is a functional disability to the lumbosacral spine and right shoulder." Id.

On March 14, 1995, Dr. J.B. Jasmin, a state agency physician, examined plaintiff. R. 68-75. Dr. Jasmin concluded that plaintiff has a lumbar/sacral sprain and right shoulder impingement. R. 68. Dr. Jasmin also found that plaintiff could occasionally lift or carry up to twenty pounds and frequently lift or carry up to ten pounds. R. 69. While making no finding about plaintiff's capacity to stand during an eight hour workday, Dr. Jasmin found that plaintiff has the capacity to sit for six hours and has unlimited capacity to push or pull with her hands. Id. Dr. Jasmin concluded that plaintiff has the residual functional capacity to perform "light work with possible improvement to 20 lbs." R. 73. On April 7, 1995, another state agency physician,

Dr. E.P. Giardino, made a diagnosis of plaintiff's condition, concluding that she had sprains and strains of all types. R. 87.

Dr. Gilbert Young, a medical expert, testified at the December 23, 1999 administrative hearing. R. 358-88. Dr. Young reviewed plaintiff's MRI dated September of 1993 and concluded that "the anatomy ... of the shoulder is angulated and this has nothing to do with a traumatic situation. In other words, this is the way the lady was built." R. 374. Dr. Young also reviewed Dr. Pena's notes and concluded that Dr. Pena made no objective findings about the plaintiff's symptoms nor did his notes mention plaintiff's back problems. R. 374-75. On cross-examination, Dr. Young admitted that the notes did include statements about plaintiff's back pain and also made findings about plaintiff's range of motion and muscle spasms that could be considered objective. R. 377-81. Dr. Young also reviewed Dr. Smith's report and concluded that Dr. Smith only found that plaintiff had a "slightly limited" range of motion, R. 375, and that Dr. Smith's finding of a functional disability merely meant that plaintiff's "subjective complaints outweigh the physical findings." R. 376.

Dr. Ernest D. Abeles, a medical expert, testified at the May 16, 2002 hearing. R. 225-41. Based on his understanding of the medical records and plaintiff's testimony, he determined that plaintiff could not stand or walk for long periods of time without sitting. R. 225. He estimated that plaintiff could stand or walk for at least two hours during the day. R. 226. He also determined that plaintiff has "mild limitation with the right shoulder because of the impingement syndrome which has never been adequately treated." Id. He stated that she has moderate limitations in bending and lifting, noting that "she should not be lifting more than ten pounds." Id. He also determined that she has no limitations with use of her hands, squatting, climbing, and

9

kneeling and could sit for up to six hours in an eight hour day. Id. Dr. Abeles concluded that plaintiff has a moderate impairment to the shoulder and lumbosacral spine, but has the capacity to do light to sedentary work. R. 227-28, 239.

D. Appeals Council Decision

The Appeals Council reviewed the ALJ's decision dated November 2, 2002. R. 154-56. The Appeals Council adopted the ALJ's findings regarding plaintiff's residual functional capacity to do a full-range of sedentary work and education and work background. R. 155. In addition, the Appeals Council accepted the ALJ's decision that plaintiff was not disabled prior to her forty-fifth birthday, June 10, 1999. Id. However, the Appeals Council rejected the ALJ's finding that plaintiff could communicate in English, noting that plaintiff required the aid of a translator during her hearings before the ALJ. Id. Accordingly, the Appeals Council partially overruled the ALJ's decision, finding plaintiff disabled as of her forty-fifth birthday on June 10, 1999 pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1.[6] Id.

## DISCUSSION

A. Standard of Review

This case comes to the court for review of the Commissioner's decision that the plaintiff was not disabled during the period for which she has claimed disability. Under the Social Security Act, a disability is defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[6] Because plaintiff's date of last insured expired on December 31, 1996, the Appeals Council held that she was not entitled to disability and disability insurance benefits and may be entitled to supplemental social security payments if she met certain eligibility requirements. R. 155-56.

death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1). An individual is considered to be under a "disability" if his impairment is of such severity that he is unable to perform her previous work and, given his age, education, and work experience, he is not able to engage in any other type of substantial gainful employment in the national economy. See 42 U.S.C. § 423(d)(2)(A). In determining whether an individual is disabled, the Commissioner is to consider both objective and subjective factors, including "objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence of pain and disability testified to by the claimant or other witnesses, and the claimant's educational background, age, and work experience." Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980) (citations omitted).

In order to establish disability under the Act, a claimant must prove that (1) he is unable to engage in substantial gainful activity by reason of a physical or mental impairment expected to result in death or that had lasted or could be expected to last for a continuous period of at least twelve months; and (2) the existence of such impairment was demonstrated by medically acceptable clinical and laboratory techniques. See 42 U.S.C. §§ 423(d), 1382(a); see also Shin v. Apfel, 1998 WL 788780, at *5 (S.D.N.Y. Nov. 12, 1998) (citing cases).

The SSA has promulgated a five step process for evaluating disability claims. See 20 C.F.R. § 404.1520. The Second Circuit has characterized this procedure as follows:

> "First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful employment. If he is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the

regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform."

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)) (brackets and alteration in original). The plaintiff has the burden of establishing disability on the first four steps of this analysis. On the fifth step, however, the burden shifts to the Commissioner. See Carroll v. Sec'y of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1983).

The court's role in reviewing the decisions of the Social Security Administration is narrowly confined to assessing whether the Commissioner applied the correct legal standards in making his determination and whether that determination is supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c); Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Donato v. Secretary, 721 F.2d 414, 418 (2d Cir. 1983). Substantial evidence is defined as "more than a mere scintilla[:]" it is evidence that a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted).

B. Merits of Plaintiff's Claims

In the instant case, the ALJ undertook the prescribed sequential analysis and found that, while plaintiff had a severe impairment, she retained the residual functional capacity ("RFC") to perform a full range of sedentary work. R. 170. The ALJ reached his conclusion based on Dr. Smith's findings that plaintiff "has only mild degenerative changes of the lumbar spine and

x-rays of the right shoulder were normal" and Dr. Abeles's conclusion that plaintiff can stand and walk for prolonged periods during the day and sit for two hours at a time for up to 6 hours in a workday. Id. The ALJ gave "greater weight" to the opinions of the consulting physician, Dr. Smith, and the medical experts, Dr. Young and Dr. Abeles, because "the evidence of record better supported it." R. 171. He gave limited weight to the opinion of Dr. Pena because "it is inconsistent with other evidence of record and is not supported by any medically acceptable clinical or diagnostic data" and it is "further limited as it consists of conclusory statements." R. 170. The ALJ considered Dr. Vargas's opinion, but held it was of limited weight because it was also allegedly inconsistent with the record. R. 170-71. The ALJ also discounted plaintiff's testimony, deeming it "not fully credible," because her subjective complaints "are not fully corroborated by the objective medical evidence." R. 171. Plaintiff argues that the ALJ improperly relied on the testimony of the consulting physician and medical experts and improperly discounted plaintiff's testimony in his determination that plaintiff was capable of a full range of sedentary work.

After reviewing the record, the court concludes that the ALJ's finding that plaintiff had the RFC to perform a full range of sedentary work is not supported by substantial evidence. According to SSA regulations, sedentary work involves lifting up to ten pounds at a time and occasionally lifting and carrying light objects. 20 C.F.R. § 404.1567(a). Sedentary work also generally requires up to two hours of standing or walking and six hours of sitting in an eight hour workday. See Social Security Ruling 83-10; see also Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996). The regulations also emphasize that "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." Social Security Ruling 83-10.

The Commissioner, who has the burden on the issue, failed to introduce sufficient evidence that plaintiff could hold a sedentary job. To the contrary, Dr. Pena, plaintiff's treating physician, concluded that plaintiff could only sit, stand, and walk for a total of two hours each during an eight hour workday. R. 253. Dr. Pena also concluded that plaintiff could only occasionally lift or carry ten pounds. Id. Moreover, Dr. Pena noted that plaintiff was incapable of repetitive actions, such as grasping and pushing or pulling, with her right hand. Id. Dr. Vargas, plaintiff's chiropractor, also found that plaintiff could not sit, stand, or walk for more than two hours each during an eight hour workday. R. 255. He also concluded that plaintiff could only occasionally lift or carry up to ten pounds. Id. In addition, Dr. Vargas noted that plaintiff had limitations in the repetitive use of her hands. Id.

The ALJ erred in rejecting the opinion of Dr. Pena, plaintiff's treating orthopedist, on the grounds that his opinion "is inconsistent with other evidence of record and is not supported by medically acceptable clinical or diagnostic data" and is made up of conclusory statements. R. 170. The medical conclusion of a "treating physician" is "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). Where the ALJ does not give the treating physician's opinion controlling weight, he is required to provide "good reasons" for this decision. Failure to do so is grounds for remand. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

Here, the ALJ inaccurately characterized Dr. Pena's impressions of plaintiff's condition by concluding that they were inconsistent with other evidence in the record and not supported

14

by medically acceptable data. As described in further detail above, Dr. Pena's treatment notes indicate that he examined plaintiff periodically from March 1991 through June 1994 and concluded that she has post-traumatic impingement syndrome of the right shoulder and post-traumatic lumbosacral syndrome. See R. 139-50. During several of these examinations, Dr. Pena found that plaintiff had a restricted range of motion in her right shoulder or lumbosacral region. See R. 140-42, 150. On June 29, 1994, Dr. Pena specifically found that plaintiff had a twenty percent loss in the range of motion of her right shoulder. R. 150. Moreover, Dr. Pena noted that plaintiff experienced spasms in her lumbosacral region on at least one occasion. R. 142. As Dr. Young conceded, observations of loss of range of motion and muscle spasms may be considered objective medical evidence. See R. 377-81. Given that range of motion tests and observations of muscle spasms are considered medically acceptable clinical data, the ALJ's decision to disregard Dr. Pena's treatment notes on the basis that his conclusions were not supported by medically acceptable data was in error.

In addition, the ALJ disregarded the RFC assessment completed by Dr. Pena, which found, among other things, that plaintiff had the capacity to sit for only two hours in an eight hour work day and lacked the ability to perform repetitive actions, such as grasping or pulling and pushing, with her right hand. R. 253. The ALJ did not give weight to the assessment because it provided no reasons for why such a low exertional capacity was found and allegedly was not supported by Dr. Smith's report. R. 170. A review of Dr. Smith's report, on which the ALJ placed great weight, reveals that he found a twenty degree loss in range of motion in plaintiff's lumbosacral region, a twenty degree loss of range of motion in straight leg raising, and a thirty degree loss of range of motion in her right shoulder. R. 130-31. Dr. Smith

15

concluded that plaintiff had a functional disability to her lumbosacral spine and right shoulder. R. 131. Thus, Dr. Pena's RFC assessment was not contradicted by Dr. Smith's consultative evaluation and, in fact, appears to be supported by it. In addition, Dr. Vargas's treatment of plaintiff, discussed in detail above, was also consistent with Dr. Pena's assessment.[7] Moreover, plaintiff's extensive testimony on two separate occasions[8] corroborates Dr. Pena's RFC assessment. She testified that her activities were seriously limited by her back and shoulder injuries, stating, for example, that she has difficulty bending to tie her shoes and lacks the strength to hold a spoon. R. 217-18.

Given that Dr. Pena's treatment notes and RFC assessment are based on objective

---

[7] Chiropractors are not considered "acceptable medical sources" under SSA regulations and, thus, are not accorded the same deference as physicians under the treating physician rule. See Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir. 1995) (citing 20 C.F.R. § 1513(a)). Nonetheless, chiropractors are specified as "other sources" that may be used "to show the severity of [the] impairment(s) and how it affects [plaintiff's] ability to work." 20 C.F.R. § 1513(d)(1). While the ALJ purported to consider Dr. Vargas's opinion, he gave it limited weight because it allegedly was not well-supported by the record. R. 171. Consistent with the analysis of the ALJ's conclusion about Dr. Pena's opinion, discussed in detail above, this court finds that the ALJ erred in concluding that Dr. Vargas's opinion was not well-supported by the record.

[8] The ALJ questioned plaintiff's credibility because her testimony was allegedly was contradicted by medical evidence in the record. R. 171. However, the findings of plaintiff's treating physician, her chiropractor, and the consulting physician Dr. Smith—medical professionals who examined plaintiff—are consistent with plaintiff's testimony. In addition, plaintiff has consistently testified about her symptoms for over six years. Plaintiff's testimony at the May 2002 hearing was entirely consistent with her earlier testimony in January 1996. The ALJ even noted that plaintiff's testimony had remained consistent, stating "I guess your day has been pretty much the same since your saw Judge Nisnewitz in 1996." R. 214. Aside from plaintiff's decision not to take pain-relieving narcotics and skepticism over whether plaintiff could speak English, the ALJ identified no evidence suggesting that plaintiff's credibility was at all questionable. Given that the Appeals Council swiftly reversed the ALJ's conclusion that plaintiff was capable of speaking English, despite her statements to the contrary and her need for a translator throughout this decade long ordeal, the court concludes that the ALJ's doubts about plaintiff's credibility are baseless.

medical evidence and were consistent with much of the evidence in the record, the court finds that the ALJ failed to provide "good reasons" for giving limited weight to the treating physician's opinion. The court, therefore, concludes the ALJ erred by failing to give Dr. Pena's opinion controlling weight.

C. The Remedy

Remand for further proceedings is the appropriate remedy "where the administrative record contains gaps" and "further development of the evidence is appropriate." Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2004). More specifically, remand is appropriate "when 'further findings would so plainly help to assure the proper disposition of [the] claim,'" but "'where this [c]ourt has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, we have opted simply to remand for a calculation of benefits.'" Butts, 388 F.3d at 385-86 (quoting Rosa v. Callahan, 168 F.3d 72, 83 (2d. Cir 1999)). A review of the case law suggests that remand for benefits is particularly appropriate when the Commissioner is unable to meet her burden of proving that the plaintiff is able to work at step five of the prescribed sequential analysis. See, e.g., Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000) ("Because the Commissioner failed to introduce evidence sufficient to sustain his burden on the fifth step in the case sub judice, remand for the sole purpose of calculating an award of benefits is mandated."); Balsamo v. Chater, 142 F.3d 75 (2d Cir. 1998) ("Where the reversal 'is based solely on the [Commissioner's] failure to sustain [her] burden of adducing evidence of the claimant's capability of gainful employment and the [Commissioner's] finding that the claimant can engage in 'sedentary' work is not supported by substantial evidence, no purpose would be served by our remanding the case for rehearing

17

unless the [Commissioner] could offer additional evidence.'" (quoting Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 644 (2d Cir. 1983)).

Here, the Commissioner's denial of plaintiff's disability claim rested on the fifth step of the sequential analysis: whether plaintiff has the RFC to perform other jobs existing in significant numbers in the national economy. R. 172. As discussed above, the ALJ erred in disregarding the treating physician's opinion that plaintiff is incapable of sedentary work. Given that Dr. Pena's opinion is controlling and substantiated by the opinions of the consulting physician and the chiropractor, in addition to plaintiff's testimony, the Commissioner's decision that plaintiff is capable of sedentary work is not supported by substantial evidence.[9] Moreover, "on the record before use we cannot now determine whether the [Commissioner] would ask to reopen the record for the purpose of introducing additional evidence and, if so, whether [s]he would be able to meet the requirements of § 405(g), i.e. (1) that the evidence be (a) new and (b) material, and (2) that good cause be shown for [her] failure to produce the evidence in earlier proceedings." Carroll, 705 F.2d at 644. Thus, remand for further evidentiary proceedings would serve no purpose. See Balsano, 142 F.2d at 82.

Given "the painfully slow process by which disability determinations are made," Carroll, 705 F.2d at 644, length of time is certainly a relevant factor in the determination of

---

[9] The ALJ primarily relies on the testimony of the medical expert, Dr. Abeles, in his conclusion that plaintiff is capable of sedentary work. R. 170-71. Oddly, the ALJ does not rely on or even cite the state agency physician's report. Of the physicians who actually examined plaintiff, only the state agency physician, Dr. Jasmin, concluded that she had the RFC to perform light or sedentary work. R. 73. Dr. Jasmin specifically found that plaintiff had the capacity to occasionally lift or carry up to twenty pounds, sit for six hours in an eight hour workday, and use her hands for repetitive motions. R. 69. While the opinions of Dr. Abeles and Dr. Jasmin are relevant, they do no constitute substantial evidence in light of the opinions of the treating physician, consulting physician, and chiropractor.

18

whether to remand for further proceedings or remand solely to calculate benefits. See Balsano, 142 F.3d at 82 (noting that proceedings had been pending for more than four years); Carroll, 705 F.2d at 644 (noting that the plaintiff applied for disability benefits four years ago). Thus, It should be noted that plaintiff applied for disability benefits almost eleven years ago. Remanding for further proceedings, particularly when the Commissioner has made no suggestion that she can offer new evidence to support a contrary decision, could delay payment of plaintiff's benefits for many more years. Based on the evidence establishing plaintiff's inability to perform her prior work as of 1994, the failure of the Commissioner to present sufficient evidence suggesting that plaintiff is capable of performing alternative substantial gainful work, and the length of time this litigation has already consumed, reversal and immediate award of benefits is appropriate.

## CONCLUSION

For foregoing reasons, defendant's motion for judgment on the pleadings is denied, plaintiff's cross motion is granted, and the Commissioner's decision that plaintiff was not disabled during the relevant period before June 10, 1999 is reversed. The case is remanded to the Commissioner solely for the calculation of benefits.

The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: December 2, 2005
Brooklyn, New York

SERVICE LIST:

<u>Counsel for the Plaintiff</u>
Wendy Brill
9 Murray Street
New York, NY 10007

<u>Counsel for the Defendant</u>
Karen Thompson Callahan
Social Security Adm. Office
26 Federal Plaza, Room 3904
New York, NY 10278