**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------X
**GUADALUPE ARCOS,**

       **Plaintiff,**

   **-against-**          **REPORT AND**
                 **RECOMMENDATION**
**COMMISSIONER OF SOCIAL SECURITY,**  **CV-97-3739 (ARR)(SMG)**

       **Defendant.**
--------------------------------------------------------------------X
**GOLD, S., U.S.M.J.:**

## INTRODUCTION

Pursuant to an Opinion and Order of U.S. District Judge Allyne R. Ross, plaintiff,

Guadalupe Arcos, has been awarded disability benefits and her case has been remanded to the

Commissioner of Social Security solely for the calculation of these benefits. Plaintiff now seeks

attorney's fees under the Equal Access to Justice Act ("EAJA"). Judge Ross referred this matter

to me pursuant to 28 U.S.C. § 636(b)(1)(B) by order dated March 3, 2006. Docket Entry 24. For

the following reasons, I respectfully recommend that the court (1) deny plaintiff's request for an

award of bad faith fees under 28 U.S.C. § 2412(b); (2) grant counsel's request for fees under 28

U.S.C. § 2412(d); (3) reduce plaintiff's claim for 112.25 hours for legal and clerical work and

travel time; and (4) find that counsel's requested hourly rate is in excess of that allowable under

28 U.S.C. § 2412(d) and reduce it accordingly.

## BACKGROUND

Plaintiff filed an application for Supplemental Security Income (SSI) and Disability

Insurance (DI) benefits in 1994, alleging that she had been disabled since 1991. Op. & Order at

2.  After an initial denial of benefits, plaintiff filed an action with this court in 1997.  *Id.*  Judge

Ross remanded the case to the Commissioner for further proceedings and "to consider new

evidence submitted by the plaintiff."  Op. & Order at 2.  After a new hearing, the Administrative

Law Judge ("ALJ") again denied the plaintiff benefits, but the Appeals Council remanded the

case after the plaintiff filed exceptions to the ALJ's decision.  *Id.*  After a second hearing, the

ALJ yet again denied benefits.  *Id.*  The Appeals Council reversed this decision in part and found

the plaintiff disabled as of June 10, 1999.  *Id.*  On December 2, 2005, Judge Ross issued an

Opinion and Order denying the defendant's motion for judgment on the pleadings, granting the

plaintiff's motion for judgment on the pleadings, and remanding the case to the Commission

solely for the calculation of benefits.  *Id.* at 19.  Plaintiff subsequently filed this application for

attorneys fees and costs under two sections of the EAJA for work performed from June of 1997

through January of 2006.

    The record of the case reveals that plaintiff quit her job permanently in July of 1991

because of pain in her arm and her right leg.  Op. & Order at 3.  At two separate hearings, the

plaintiff testified that she had persistent pain in her shoulder and arm and that her activities were

extremely limited.  *Id.* at 3-4.  Plaintiff said that she was so weak at times that she could not sit

for more than 20 minutes or hold up a spoon.  *Id.* at 4.  Plaintiff testified that her activities were

mainly restricted to watching television and reading; activities such as cleaning or grocery

shopping required the assistance of others.  *Id.* at 4.

    During the course of the various proceedings in this case, several medical experts testified

about the plaintiff's condition.  One of these physicians was Dr. Pena, who began treating the

plaintiff in 1991.  *Id.* at 5.  Based on a residual functional capacity evaluation, Dr. Pena

concluded that the plaintiff had limited capacity to move and limited function in her right hand. *Id.* Dr. Vargas, a chiropractor who had treated the plaintiff since 1990, concluded in a separate residual functional capacity evaluation that the plaintiff could only sit, stand, and walk respectively for less than two hours a day. *Id.* at 6-7. Dr. Vargas also noted that the plaintiff was limited in the use of her right hand. *Id.*

Dr. Smith, a consulting physician, concluded that the plaintiff had similar limitations in the movement of her shoulder and diagnosed her with lumbosacral sprain and chronic impingement of the right shoulder. *Id.* at 8. A state agency physician, Dr. Jasmin, testified that the plaintiff could lift lighter objects, had limited capacity to sit, and had no difficulty pushing or pulling with her right hand. *Id.* Dr. Jasmin stated that the plaintiff had the capacity to do "light work with possible improvement to 20 lbs." *Id.* A second state agency physician, Dr. Giardino, testified that the plaintiff had "sprains and strains of all types." Another physician, Dr. Young, testified, however, that Dr. Pena's findings did not indicate that plaintiff had sustained a traumatic injury and concluded that Dr. Smith had only found a "'slightly limited' range of motion." *Id.* at 9. Finally, Dr. Abeles, an additional medical expert, concluded that the plaintiff had moderate limitations in terms of bending and lifting, but "no limitations with use of her hands, squatting, climbing, and kneeling," or sitting for up to six hours a day. *Id.* at 9-10. Dr. Abeles concluded that the plaintiff could do "light sedentary work." *Id.* at 10.

Based on the evidence above, Judge Ross found that the ALJ's conclusion that the plaintiff had the residual functional capacity to perform sedentary work was not supported by substantial evidence. *Id.* at 13, 18. Judge Ross also found that the ALJ failed to provide good reasons for not according the opinion of plaintiff's treating physician controlling weight. *Id.* at

14.  Judge Ross concluded that the ALJ's characterization of Dr. Pena's opinions as inconsistent with the record and not supported by those of other experts, such as Dr. Smith, was inaccurate. *Id.* at 14-15.  Based on the entire record, Judge Ross determined that "reversal and immediate award of benefits is appropriate" and remanded only for the calculation of benefits.  *Id.* at 19. After entry of judgment, plaintiff filed the EAJA application addressed below.

## DISCUSSION

The provisions of the EAJA that the plaintiff relies on for an award fees and costs are 28 U.S.C. § 2412(b) and (d).

Section (b) states:

**(b)** Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

Section (d)(1)(A) states:

**(d)(1)(A)** Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

There is a significant difference between fee awards under Sections (b) and (d).  Under Section (b), an attorney for a prevailing party may recover her "reasonable" fees.  Under Section (d), however, attorney's fees are subject to the limitation that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a

special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(1)(D)(2)(A).

Plaintiff claims that both sections (b) and (d) apply to this case.  Because the analysis that is required under these two sections is different, I consider them separately below.

*A.) Award of Fees Under 28 U.S.C. § 2412(b)*

At common law, courts have consistently followed the "American Rule," which states that attorney's fees generally are not recoverable by a prevailing party absent explicit statutory or contractual authorization.  *Key Tronic Corp. v. United States*, 511 U.S. 809, 814-15, 114 S. Ct. 1960, 1965 (1994).  There are, however, common law exceptions to this rule for cases involving willful violation of a court order and litigation brought in bad faith or for oppressive reasons. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59, 95 S. Ct. 1612, 1622 (1975).  Section 2412(b) incorporates these exceptions by allowing an award of attorneys fees "to the same extent that any other party would be liable at common law."  28 U.S.C. § 2412(b); *Kerin v. United States Postal Serv.*, 218 F.3d 185, 190 (2d Cir. 2000).

An action may be said to have been brought in bad faith and justify an award of fees only if the losing party's claims or defenses were "(1) meritless[] *and* (2) brought for improper purposes such as harassment or delay."  *Kerin*, 218 F.3d at 190, *citing Sierra Club v. United States Army Corps of Eng'rs*, 773 F.2d 383, 390 (2d Cir. 1985) (emphasis added). Determinations of bad faith, moreover, must be supported by highly specific findings.  *Id.* at 191. In this case, I conclude that there is not sufficient evidence of bad faith to warrant an award of attorney's fees under Section 2412(b).

Plaintiff Arcos premises her argument of bad faith on (1) "the Commissioner's 11 year

failure to properly apply its own regulations;" and (2) the Commissioner's disregard for the "treating physician rule." Pl.'s Mem. Supp. Mot. at 4. Plaintiff further argues that an ALJ's refusal to grant her leave to submit post-hearing Residual Functional Capacity Forms could only have been for the purpose of delaying her case. Pl.'s Reply Mem. at 7. In addition, plaintiff contends that the Appeals Council's failure to request evidence of a residual functional capacity evaluation in 1997 demonstrated bad faith because it "should have been apparent that such evidence was missing." *Id.* None of these factors nor any other evidence in the record supports a finding that the defendant acted in bad faith.

First, there is no evidence that the Commissioner here purposefully delayed plaintiff's case or improperly abused procedures to harass her. While the refusal of the ALJ to grant the plaintiff time to submit Residual Capacity Forms post-hearing may have been upsetting to the plaintiff and her counsel, there is no reason to believe that this refusal was intended to harass plaintiff or deliberately delay the proceedings. Pl.'s Reply Mem. at 7. Similarly, plaintiff's contention that the failure of the Appeals Council to request evidence in 1997 was evidence of bad faith seems to be merely conjecture.

Second, although Judge Ross concluded that the ALJ failed to provide "good reasons" for not according greater weight to the treating physician's testimony and "inaccurately characterized" some of the medical evidence, the record, as summarized by Judge Ross, did include medical opinions stating that the plaintiff was capable of sedentary work, Op. & Order at 13-17, thus suggesting that the government's position was not "meritless or 'entirely without color'" *Kerin*, 218 F.3d at 190 n.2, *quoting Sierra Club,* 776 F.2d at 390; *Mara v. Sullivan*, 721 F.Supp. 520, 527 (S.D.N.Y. 1989). The debate about the plaintiff's residual functional capacity

was, therefore, such that "a reasonable attorney could have concluded that the facts supporting the claim *might* be established."  *Kerin*, 218 F.3d at 190 n.2 (emphasis in original).

Finally, courts have generally agreed that a failure to apply the treating physician rule, while an indication of a lack of substantial justification for the government's position, is not sufficient to constitute the type of "egregious conduct" required for a finding of bad faith.  *Mara*, 721 F.Supp. at 527, *citing Wells v. Bowen*, 855 F.2d 37, 47 (2d Cir. 1988) (emphasizing that bad faith requires that a claim or defense be both devoid of merit *and* made to harass, delay, or for other improper purposes); *Hills v. Sec'y of the United States Dep't of Health & Human Servs.*, 726 F.Supp. 434, 437 (E.D.N.Y. 1989) (agreeing with *Mara* regarding the treating physician rule and the standard for a finding of bad faith); *Garcia v. Bowen*, 702 F.Supp. 409, 410 (S.D.N.Y. 1988) (holding that the failure to apply the treating physician rule indicates a lack of substantial justification for the government's position).

Based on the evidence on the record in this case, I do not find the circumstances to be so extreme as to justify a finding of bad faith.  Therefore, plaintiff's application for an award of attorney's fees under 28 U.S.C. § 2412(b) should be rejected.

*B.) Award of Fees Under 28 U.S.C. § 2412(d)*

Section 2412(d) of the EAJA provides for the recovery of fees if (1) the claimant is the prevailing party; (2) the government's position was not substantially justified; (3) there are no special circumstances that make an award unjust; and (4) the application was received within 30 days of the final judgment.  28 U.S.C. § 2412(d); *Kerin*, 218 F.3d at 189; *Marschok v. United States*, 150 F. Supp. 2d 522, 525 (E.D.N.Y. 2001).

Here, the government puts forth no argument attempting to demonstrate that the

Commissioner's position was substantially justified or that the plaintiff is not otherwise entitled to attorney's fees pursuant to Section 2412(d). Rather, defendant contends only that the fees demanded are excessive in light of the limitations imposed by the statute. More specifically, the government does not dispute that plaintiff is a prevailing party,[1] make any argument that the Government's position was "substantially justified.," or point to any special circumstance that would make an award of fees unjust.

Applications under the EAJA must be filed "within thirty days of a final judgment." 28 U.S.C. § 2412(d)(1)(B). For purposes of that section, "'final judgment' means a judgment that is final and not appealable." 28 U.S.C. § 2412(d)(1)(D)(2)(G). The time period for filing the application runs from the time that a court of law – here the district court – enters a judgment that "terminates the civil action for which EAJA fees may be received. The 30-day EAJA clock begins to run after the time to appeal that 'final judgment' has expired." *Melkonyan v. Sullivan*, 501 U.S. 89, 96, 111 S. Ct. 2157, 2162 (1991). In a case where the United States is a party, notice of appeal may be filed within 60 days of the judgment. Fed. R. App. P. 4(a)(1)(B) (2006). The District Court entered judgment on December 8, 2005, and the plaintiff filed her EAJA application on January 27, 2006. Plaintiff's application is therefore timely.

Once it is determined that a plaintiff is a prevailing party, the burden shifts to the

---

[1]The plaintiff here is a prevailing party according to the Supreme Court's decision in *Sullivan v. Hudson,* 490 U.S. 877, 886 (1989) because the district court's order remanded the case to the "solely for the calculation of benefits" and not to determine the plaintiff's entitlement to benefits. Op. & Order at 19. The Supreme Court held in *Sullivan* that "where a court's remand to the agency for further administrative proceedings does not necessarily dictate the receipt of benefits, the claimant will not normally attain 'prevailing party' status within the meaning of § 2412(d)(1)(A) until after the result of the administrative proceedings is known." *Id.*

government to show "substantial justification" for its litigation position. *Commodity Futures Trading Com'n v. Dunn*, 169 F.3d 785, 785 (2d Cir. 1999). Without any showing or argument by the government at all in this case to challenge plaintiff's contention that the government's position was not substantially justified, and in light of the government's acknowledgment that the plaintiff is entitled to attorney's fees, I conclude that plaintiff is entitled to an award of fees pursuant to Section 2412(d). Def.'s Mem. Opp'n Mot. at 8-9. Thus, the only issue left for examination is the defendant's claim that the demand for fees and costs is excessive.

    *1.) Number of Hours*

    Under 28 U.S.C. § 2412(d), a party is entitled to "reasonable" attorney's fees not in excess of $125.00 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2414(d)(1)(D)(2)(A).

    The district court has "broad discretion" when determining the reasonableness of attorney's fees and costs, such as photocopying and faxing, under the EAJA. *Aston v. Sec'y of Health & Human Servs.*, 808 F.2d 9, 11-12 (2d Cir. 1986). In determining what is reasonable, courts need not "scrutinize[] each action taken or the time spent on it." *Id.* Courts in this Circuit have awarded fees in this type of case for a range of hours, finding that anywhere from 20 hours to 222 hours was acceptable based on differing circumstances. *Aston*, 808 F.2d 9, 11 (approving district court's award of 200 hours); *Cruz v. Apfel*, 48 F. Supp. 2d 226, 231 (E.D.N.Y. 1999) (finding an acceptable range of 20-40 hours within the Eastern District and finding 60 hours, including 10 attorney and 50 non-attorney, acceptable for a "difficult client"); *Garcia v. Bowen*, 702 F.Supp. 409, 411 (S.D.N.Y 1988) (approving 156.2 hours and finding a range of up to

222.04 hours acceptable); *Ceglia v. Schweiker*, 566 F.Supp. 118, 125 (E.D.N.Y. 1983) (reducing 36.5 hours to 20).

Here, the government argues that the 112.25 hours of work claimed by plaintiff's counsel are excessive. The government contends that the issues following the Appeals Council's partially favorable decision on remand were simple and did not require counsel to spend "45 hours preparing a memorandum of law and nearly six hours reading letters and emails." Def.'s Mem. Opp'n Mot. at 10. Moreover, the government asserts that plaintiff's counsel's billing sheets are vague, list "improbable" quarter-hour increments for phone calls, and improperly bill for time spent on paralegal or clerical functions and travel at the same rate charged for legal work. *Id.* at 11. Plaintiff contends that 112.25 hours was a reasonable amount of time for a case that dragged on for eight years, and offers to reduce the rate for time spent on clerical functions, which she says amounts to only 2.75 hours, to $75.00 per hour. Pl.'s Reply Mem. at 2-4. Plaintiff also argues that this was not a typical case and that it required a great deal of time to summarize two hearings. *Id.* at 3.

The time records submitted by plaintiff's counsel lack detail, and as a result, do "not instill confidence in their precision." *Cruz*, 48 F. Supp. 2d at 230; *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983) (requiring counsel to keep specific billing records or have her hours reduced). While the court in Cruz stated, and the defendant here agrees, that in a standard disability case a reasonable number of hours ranges from 20-40 hours, other courts have accepted a higher number of hours as reasonable when the case is legitimately complex. *Cruz*, 48 F. Supp. 2d at 231; *Aston* 808 F.2d at 12. Here, plaintiff's case lingered on for eight years and included two administrative hearings and appeals,

an action before this court, and an EAJA application.  Still, although there was a great deal of medical testimony to sift through and evaluate, plaintiff counsel's time sheets do reflect seemingly repetitive entries for relatively simple tasks, such as "[r]eceipt and review of remand order," *see* Pl.'s Mem. Supp. Mot. at App., Entries dated January 13, 1998, January 23, 1998 and February 9, 1998, as well as more than 40 hours for the preparation of one memorandum of law. *See* Pl.'s Mem. Supp. Mot. at App., Entries dated June 1 - July 5, 2005.  A review of the memorandum of law, which was dated and docketed on July 1, 2005, reveals that it is an extensive thirty page document that summarizes many facts and cites a significant amount of case law.  *See* Docket Entry 16.  However, it is troubling that the memorandum was docketed on the July 1, 2005, but the records plaintiff submitted to this court indicate time devoted to working on the memorandum running through July 5, 2005.  Moreover, much of the cited case law stands for general propositions, and the different fonts in the memorandum suggest that some of the legal discussion was taken from other documents.  In light of this, the 44 hours billed for this work seem particularly excessive.

For these reasons, I recommend that the number of hours sought be reduced.  Before making a reduction, however, I note that an award of fees under the Act serves "not only to fully and reasonably compensate attorneys of prevailing plaintiffs," but also as a "penalty"against the government for taking a position that was not "substantially justified."  *Garcia*, 702 F.Supp. at 411.  In this case the ALJ repeatedly mischaracterized a great deal of consistent medical evidence and ignored the opinions of treating physicians without a sufficient basis for doing so.  The result was eight years of back and forth between administrative tribunals and this court.  Now, finally, nearly 15 years after the original injury, plaintiff will receive the benefits to which she is entitled.

For all of these reasons, I recommend a small reduction of 10% in the number of hours sought by plaintiff. *See Carey*, 711 F.2d at 1146 ("courts have endorsed percentage cuts as a practical means of trimming fat from a fee application").

*2.) Hourly Rate*

The EAJA allows attorney's fees under Section 2412(d) not in excess of $125 for cases brought on or after March 29, 1996. *Kerin*, 218 F.3d at 189. This ceiling of $125 per hour may be raised only based on an increase in the cost of living or a special factor, such as limited availability of qualified counsel for cases of the kind at issue.[2] 28 U.S.C. § 2412(d)(2)(A). It is the law of this Circuit that the phrase "cost of living" is to be "given its common, ordinary meaning" and is properly measured by the Consumer Price Index ("CPI"). *Harris v. Sullivan*, 968 F.2d 263, 265 (2d Cir. 1992).

Defendant argues that counsel's initial calculation of an adjusted hourly rate of $158.77 is excessive because plaintiff's counsel adjusted the $125 cap based on 2005 figures to determine the hourly rate for work performed in years prior to that. Def.'s Mem. Opp'n at 12-13. Defendant also argues that the counsel's time for clerical tasks, which the defendant calculates to be four hours, should be billed at a lower rate. *Id.* at 11. In addition, defendant asks that there be an hourly rate reduction for travel time. *Id.* Finally, although conceding that the Consumer Price Index is the appropriate means to calculate the hourly rate, defendant suggests that to avoid "complicated mathematical calculations," the court simply award plaintiff attorney's fees in a lump sum of $7,500. *Id.* at 13. Plaintiff, in her reply memorandum, acknowledges that her

---

[2]Neither the defendant nor plaintiff argues that limited availability of counsel or any other special factor warrants an increase in the hourly rate.

counsel's hourly rate should be calculated according to the specific year in which the work was performed and suggests that the Consumer Price Index Urban is a more accurate measure than the Consumer Price Index. Pl.'s Reply Mem. at 6.

Defendant has cited no authority from this Circuit indicating that it is appropriate to set a flat fee to avoid a "complicated" calculation of an appropriate cost-of-living adjustment. Similarly, plaintiff has cited no basis for using a special "urban" price index. Rather, as previously stated, the appropriate measure of the "increase in cost of living" under Section 2412(d) is the Consumer Price Index. *Harris*, 968 F.2d at 265. Accordingly, counsel's hourly rate should be increased based on the CPI for the year in which the work was performed. *Kerin*, 218 F.3d at 194. In addition, counsel's time for routine clerical tasks, such as photocopying and faxing, which defendant argues totals four hours for entries on 06-29-97, 12-5-97, 12-8-97, 6-23-99, and 2-8-00, should be billed at a rate of $75 per hour. Def.'s Mem. Opp'n at 11 n.9; *Cruz*, 48 F. Supp. 2d at 230 (quoting $75 as the hourly rate for paralegal work in New York City). Although plaintiff asserts that only 2.75 hours were spent on clerical functions, she does not indicate the specific entries in counsel's time sheets to which she refers. Pl.'s Reply Mem. at 4. Thus, I recommend that the court adopts defendant's calculation of four hours, less one hour for "preparation of summons, complaint, and related forms," which I do not find to be clerical functions, for a total of three hours spent on clerical functions. Pl.'s Mem. Supp. Mot. at App.; *see Aston*, 808 F.2d at 12 (noting acceptable items for clerical costs). The six hours of travel time should be billed at 50% of the rate for those respective years. *Loper v. City of New York*, 853 F.Supp. 716, 720 (S.D.N.Y. 1994). All other entries should be calculated based on the CPI. *See*, CPI Inflation Calculator, *at* http://stats.bls.gov/ (last visited Dec. 26, 2006). The results,

with the number of hours drawn from the time records annexed as an appendix to plaintiff's motion for EAJA fees, are as follows:

| Year | Clerical Hours ($75/hour) | Travel Hours (½ Attorney Rate) | Attorney Hours | Attorney Hourly Rate (based on CPI) | Total |
|------|------|------|------|------|------|
| 1997 | 1.5 | 0 | 2.0 | $127.87 | $368.24 |
| 1998 | 0 | 0 | 2.25 | $129.86 | $292.19 |
| 1999 | 1.25 | 4 | 9.25 | $132.73 | $1586.96 |
| 2000 | .25 | 0 | 8.25 | $137.19 | $1150.57 |
| 2001 | 0 | 0 | 14.25 | $141.09 | $2010.53 |
| 2002 | 0 | 2 | 5.75 | $143.32 | $967.41 |
| 2003 | 0 | 0 | 5.5 | $146.59 | $806.25 |
| 2004 | 0 | 0 | 1.75 | $150.49 | $263.36 |
| 2005 | 0 | 0 | 51.75 | $155.59 | $8051.78 |
| 2006 | 0 | 0 | 2.5 | $160.53 | $401.32 |
|  |  |  |  | Total | $15,898.62 |
|  |  |  |  | **Award with 10% Reduction** | **$14,308.76** |

## CONCLUSION

For reasons stated above, I respectfully recommend that plaintiff's application for "bad faith" fees under 28 U.S.C. § 2412(b) be denied. I further recommend that Plaintiff's application for fees under Section 2412(d) be granted and reduced according to the law of this Circuit to $14,308.76, which includes travel and clerical costs, for work performed from 1997 to 2006.

Any objections to this report and recommendation must be filed with the Clerk of the

Court, with copies provided to the Honorable Allyne R. Ross within ten days of receipt and in any event no later than January 22, 2006. Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. §636(b) (1); Fed.R.Civ.P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 14, 15 (2d Cir. 1989).

_____/s/_____
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
January 5, 2006

*U:\JB 2006-2007\Arcos010507.wpd*